## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| FIDELITY EXPLORATION & PRODUCTION COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID BERNHARDT, Acting Secretary of the Interior of the United States of America[1]; JON K. RABY, in his official capacity as acting Montana/Dakotas State Director, Bureau Of Land Management; UNITED STAES DEPARTMENT OF THE INTERIOR, an agency of the United States Government; and BUREAU OF LAND MANAGEMENT, an agency of the United States Government,<br><br>Defendants. | CV 16-167-BLG-SPW-TJC<br><br><br>**FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |

Plaintiff, Fidelity Exploration & Production Company ("Fidelity") filed this action against the above-named Federal Defendants seeking judicial review of a decision of the Department of the Interior ("DOI") Interior Board of Land Appeals.

The case has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A).  Presently before the Court are the parties' cross-motions for

---

[1] Substituted pursuant to Rule 25(d) of the Federal Rules of Civil Procedure for the former Secretary, Ryan Zinke.

summary judgment. (Docs. 25, 28.) The motions are fully briefed and ripe for the Court's review.

For the reasons set forth herein, and after careful consideration of the parties' arguments and submissions, the Court **RECOMMENDS** that Fidelity's motion for summary judgment be **DENIED**, and Defendants' motion for summary judgment be **GRANTED**.

## I.    Background

Fidelity is a corporation involved in the business of natural gas exploration and extraction. Defendant Bureau of Land Management (BLM) is an agency within the DOI that manages public lands, including oil and gas leases on federal lands within its jurisdiction. The BLM makes decisions regarding the oil and gas leases through its various field offices. Those decisions are reviewable by BLM State Directors. 43 C.F.R. § 3165.3(b). A State Director's decision may be administratively appealed to the DOI's Interior Board of Land Appeals ("IBLA"). 43 C.F.R. § 3165.4(a). The IBLA's decision becomes the final agency action.

In 1999, Fidelity began a coal bed natural gas development in Big Horn County, Montana. (Doc. 30 at ¶ 1.) To obtain authority for the project, Fidelity submitted two plans of development to the BLM. *Id.* at ¶ 2. Both of the proposed plans of development included a mix of federal, state, and private lands, and specified how the federal lease wells would be managed. *Id.* at ¶ 3. One project

provided for the drilling and completion of 178 wells, including 86 federal wells, 72 fee wells, and 20 state wells.  (Doc. 30 at ¶ 11.c.)  The second project contemplated the drilling and completion of 210 wells, consisting of 132 federal wells, 16 state wells, and 62 fee wells.  (Doc. 30 at ¶ 11.d.)  The BLM approved the plans in 2004 and 2005, and Fidelity drilled and began operation of the gas wells.  *Id.* at ¶ 12.

In 2010, the BLM Miles City Field Office ("Field Office") began conducting inspections of Fidelity's gas wells.  (Doc. 32 at ¶ 29.)  On February 25, 2011, the Field Office sent a letter to Fidelity detailing potential violations in Fidelity's gas production reports.  *Id.*  First, Fidelity was advised it was improperly reporting volumes from a master sales meter, rather than from individual well meters.  (Doc. 32 at ¶ 30.)  The master sales meter included gas volumes which were commingled from multiple wells.  Fidelity was told that the "Federal Measurement Point" is the meter for each individual well, prior to commingling with gas from other wells.  *Id.*  Fidelity was directed to either begin reporting the gas volumes for the individual well meters, or to submit an application for authorization to report the comingled volumes from the master sales meter.  *Id.*

Second, Fidelity was advised it was improperly reporting BTU value from the commingled gas stream, rather than conducting a gas analysis from each individual well.  *Id.*

3

Finally, Fidelity was told that it was improperly reporting gas as "used on lease." Gas used on a lease to operate production equipment for the benefit of the federal lease ("beneficial use") is not subject to royalty fees. But Fidelity was advised that once gas is downstream from the Federal Measurement Point and has left the lease or communitized area, it is generally not considered beneficial use and not given that royalty-free benefit. *Id.*

On April 9, 2012, the Field Office sent another letter to Fidelity identifying the same concerns, and directing the same corrective actions. (Doc. 32 at ¶ 31. Fidelity responded that it was in compliance with federal requirements, and claimed that BLM had authorized its procedures when it approved Fidelity's plans of development. (Doc. 32 at ¶ 32.)

The Field Office then issued an order to Fidelity on October 25, 2012 to address these alleged violations. (Doc. 30 at ¶ 16.) Fidelity was ordered to report gas volumes from the individual wells prior to commingling, and to submit amended production reports to the DOI Office of Natural Resources Revenue ("ONRR") for the previous six years. *Id.* The ONRR is tasked with auditing lease payments to determine accurate calculation and payment of royalties. *Id.* at ¶ 18. *See also*, 30 U.S.C. § 1711(a), (c); 30 C.F.R. § 1201.100.

Fidelity was also ordered to discontinue reporting gas used downstream of the Federal Measurement Point as "used on lease" for beneficial use purposes.

(Doc. 30 at ¶ 16.)  It was further directed to submit amended reports to the ONRR

for the last six years, eliminating unauthorized beneficial use deductions.  *Id.*

Fidelity requested a State Director review of the Field Office order on

November 15, 2012.  (Doc. 30 at ¶ 20.)  The State Director affirmed the order, and

Fidelity appealed to the IBLA.  *Id.* at ¶ 21, 22.  On appeal, the BLM requested a

remand of the matter back to BLM.  The agency explained that, while the BLM

had the authority to require Fidelity to submit corrected volumes to the Field

Office, only the ONRR had the authority to order amended production reports.  *Id.*

at ¶ 22; AR 668-69.)  In accordance with the request, the IBLA set aside the State

Director's decision and remanded the case to the BLM.  *Id.* at ¶ 23.

On remand, the State Director modified the Field Office order by replacing

the demand that Fidelity file amended production reports with the ONRR, with the

demand that Fidelity submit corrected volumes to the Field Office for verification.

*Id.* at ¶ 25.  In all other relevant respects, the modified order mirrored the initial

Field Office order.  *Id.*; AR 674, 684.  On appeal, the IBLA affirmed the State

Director's modified order.  *Fidelity Exploration & Production Co.*, 188 IBLA 302

(2016.)

Fidelity subsequently brought this action under the Administrative

Procedure Act (APA), seeking judicial review of the IBLA's decision.  (Doc. 1.)

Fidelity alleges that the IBLA wrongfully affirmed the State Director's order

modifying and upholding the Field Office's order.  Fidelity requests that this Court

issue a declaratory ruling finding the State Director's modified order invalid, set

aside and vacate the IBLA decision, declare the Field Office order invalid, and

enjoin further enforcement of the order.  (Doc. 2 at 30.)

## II.    Parties' Arguments

Fidelity presents three issues for review: (1) whether the BLM may modify

an order that was previously set aside and remanded by the IBLA; (2) whether the

BLM enforced an order in violation of the limitations periods set forth in Federal

Oil and Gas Royalty Simplification and Fairness Act (30 U.S.C. § 1724(b)); and

(3) whether BLM authorized the measurement and beneficial use of commingled

gas when it approved Fidelity's plans of development.

The Defendants deny Fidelity's claims and argue the IBLA correctly found

that the BLM acted within the scope of its authority.  (Doc. 29.)  The Defendants

insist BLM never authorized Fidelity to measure gas after commingling; BLM

appropriately issued findings of violation and ordered corrective actions; and

BLM's actions are not subject to the timing limitations contained in 30 U.S.C. §

1724(b).

///

///

///

6

### III.    Legal Standard

#### A.    Judicial Review under the Administrative Procedure Act

In reviewing an agency action under the APA, the Court must determine whether the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A).  When the IBLA acts as the final decision maker of the agency, the IBLA's decision is the final agency action. *IMC Kalium Carlsbad, Inc. v. Interior Bd. Of Land Appeals*, 206 F.3d 1003 (10th Cir. 2000).  "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto Ins. Co.,* 463 U.S. 29, 43 (1983).

The APA standard of review is narrow, and the reviewing court may not substitute its own judgment for that of the agency.  *Geo-Energy Partners-1983 Ltd. v. Salazar*, 613 F.3d 946, 955 (9th Cir. 2010)*.*  The agency, however, must articulate a rational connection between the facts found and the decision made.  *Id.* at 955.  The Court then determines whether the administrative record supports the agency's decision.  *Stuttering Found. Of Am. v. Springer*, 498 F.Supp.2d. 203, 207

7

(D.D.C. 2007) (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985)).

### B.      Summary Judgment Standard

Summary judgment is the appropriate standard for resolving challenges to an agency decision based on an administrative record.  *Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 779 (9th Cir. 2006.)  In reviewing the administrative record under this standard, the Court's function is not to determine whether genuine issues of material fact exist.  *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985).  Instead, the Court reviews the administrative record to decide "the legal question of whether the agency could reasonably have found the facts as it did." *Id.*

## IV.   Discussion

### A.  Did the BLM authorize off-lease measurement of commingled gas, and beneficial use of commingled gas off-lease when it approved Fidelity's plans of development?

Fidelity contends that the plans of development submitted to BLM gave the agency notice and knowledge that gas would be commingled prior to measurement, and that Fidelity planned off-lease beneficial use of gas for its operations.  (Doc. 26 at 22.)  The Defendants counter that the plans contain no

reference to either practice, both of which must be explicitly approved by the BLM.  (Doc. 29 at 19.)

Under the governing regulations, a lessee may commingle gas production and measure it off-lease with BLM's authorization.  Prior to 2017, 43 C.F.R. § 3162.7-3 provided: "[o]ff-lease measurement or commingling with production from other sources prior to measurement may be approved by the authorized officer."

The regulations also permit a lessee to make off-lease beneficial use of gas with BLM's authorization.  30 C.F.R. §1202.150(b)(2) provides: "[w]hen gas is used on, or for the benefit of, the lease at a production facility handling production from more than one lease with the approval of BSEE or BLM, as appropriate, or at a production facility handling unitized or communitized production, only that proportionate share of each lease's production (actual or allocated) necessary to operate the production facility may be used royalty free."

Nevertheless, the IBLA found Fidelity failed to obtain the authorization required by these regulations.  With respect to the method of measurement, the IBLA concluded BLM must separately approve a lessee's requests to measure gas off-lease and to commingle gas before measurement.  *Fidelity Exploration & Production Co*, 188 IBLA at 308 (citing *Devon Energy Production Co., L.P.,* 176 IBLA 396, 406).  Because they are two distinct actions – commingling and

measuring off-lease – the approval of one action is not tantamount to approval of the other.  *Fidelity Exploration & Production Co.*, 188 IBLA at 308.  Therefore, with only BLM's approval to measure gas off-lease, Fidelity did not also have authority to commingle gas for measurement purposes.  *Id.*

In reaching this conclusion, the IBLA searched the plans of development for BLM's authorization of Fidelity's measurement approach.  *Id.*  The IBLA determined that the plans did not include a request or receipt of BLM's authorization to measure commingle gas.  *Id.*  The IBLA acknowledged that the plans explicitly indicate that the federal wells would be managed in conjunction with other leased wells, and that they would share centralized facilities where gas would be metered.  *Id.*  But the IBLA found those general statements do not establish nor imply that Fidelity obtained the requisite authority from BLM to employ the measurement practices it utilized.

In challenging the IBLA's findings here, Fidelity again directs the Court to various provisions in the plans of development purporting to show BLM's authorization.  (Doc. 26 at 23-27.)  The Court agrees these provisions establish Fidelity's intention to operate its gas wells in conjunction with other wells, including sharing facilities for operations such as central gas gathering and metering.  But the Court cannot agree these provisions imply that BLM authorized the metering of gas from federal wells after being commingling with other wells.

To the contrary, both plans of development state "[m]etering of natural gas from *each well*" would occur at the centralized facility. (Doc. 30 at ¶ 11.h & i.) (emphasis added). The Court agrees with the IBLA that authorization to use a centralized facility does not equate to approval to commingle gas before measurement. None of the provisions relied upon by Fidelity contain any reference to reporting based upon comingled volumes. "[I]n the absence of BLM's prior authorization, the operator is required to measure gas production from each wellhead for royalty reporting purposes." *Devon Energy Production Co., L.P.,* 176 IBLA at 407-08.

Moreover, the BLM has intermittently issued guidelines governing commingling, which explain commingling may be authorized when it is in the public interest and economically beneficial. *Byron Oil Industries, Inc.*, 161 IBLA 1, at 5 (2004) (quoting BLM's commingling Guidelines in effect in 2004. More recent guidelines demand the same considerations. *See* IM 2011-184, IM 2013-152.) Here, nothing in the record suggests that the BLM considered the propriety of comingling by engaging in this public interest or economic analysis.

The Court further finds no indication that BLM approved of beneficial use of the commingled gas off-lease. The record does not contain any reference to fidelity requesting authorization for off-lease beneficial use, nor does it contain

BLM's authorization for such use.  The Court will therefore not strain the record to find implied authorization.

Accordingly, without support in the record for Fidelity's contention that the BLM authorized measurement of comingled volumes, or beneficial use of commingled, off-lease production, this Court cannot find the IBLA's decision on the measurement or beneficial use issues to be arbitrary, capricious, an abuse of discretion, or contrary to law.

### B.  Was the modified order time-barred?

Fidelity also argues the IBLA erred in finding that the Field Office modified order is not time-barred under the Federal Oil and Gas Royalty Simplification and Fairness Act of 1996 (30 U.S.C. § 1724(b)).  The United States Supreme Court outlined the development of this statutory scheme in in *BP America Production Co. v. Burton*, 549 U.S. 84 (2006).  The Court explained that Congress initially passed the Mineral Leasing Act in 1920, which authorized the Secretary of the Interior to lease public lands for oil and gas production.  *BP America Production Co.*, 549 U.S. at 87.

In 1982, the Federal Oil and Gas Royalty Management Act was enacted to address the antiquated system of accounting for oil and gas royalties and other payments.  *Id. at* 87-88.  The Act directed the Secretary of the Interior to audit current and past oil and gas lease accounts, and to make collections and refunds

when necessary. *Id.* The Secretary assigned those duties to the Mineral Management Service, the predecessor to the ONRR. 30 C.F.R. § 1217, et seq.

Congress later enacted the Federal Oil and Gas Royalty Simplification and Fairness Act in 1996 to supplement the royalty payment scheme. *BP America Production Co.*, 549 U.S. at 89. The 1996 Act includes a seven-year limitation period for any "judicial proceeding or demand" arising from a royalty obligation under a federal oil or gas lease. 30 U.S.C. § 1724(b)(1). The Supreme Court determined that the statute of limitations applies to both judicial actions and administrative payment orders. *BP America Production Co.*, 549 U.S. at 89.

The statute of limitations provides that "[a] judicial proceeding or demand which arise from, or relates to an obligation, shall be commenced within seven years from the date on which the obligation becomes due and if not so commenced shall be barred." 30 U.S.C. § 1724(b)(1). If the statute applies, it not only bars commencement of a judicial proceeding or demand after seven years, but also prevents the Secretary from taking other further action regarding the time-barred obligation, including "the issuance of any order . . .[or] demand . . . seeking . . . an accounting . . . calculation . . . [or] pursuit or completion of an audit with respect to the obligation. 30 U.S.C. § 1724(b)(1).

Fidelity argues the modified Field Office order constitutes "an ongoing action regarding a purported time-barred obligation," and is therefore unlawful.

(Doc. 26 at 20.)  Defendants counter that § 1724(b) is part of a section of Federal Oil and Gas Royalty Management Act that applies to ONRR and demands for payment of royalties, and does not eliminate BLM's broad authority to order records of production.  (Doc. 29 at 27.)

The IBLA agreed with Defendants and found "what is not before this Board is any demand . . . to which the statute of limitations applies." *Fidelity Exploration & Production Co.*, 188 IBLA 302, 307.  The IBLA explained that Fidelity's statute of limitations argument would only apply if and when a demand for payment is made under the statute.  *Id.*

The Court agrees with the analysis of the IBLA.  The Court is unaware of any case where § 1724(b)(1) has applied to the BLM's recordkeeping functions. By its terms, the statute applies to judicial proceedings or demands "which relate to an obligation."  As relevant here, an obligation is defined in the Act to mean "any duty of a leasee . . . to pay, offset or credit monies including (but not limited to) . . . any royalty" related to the production and development of oil and gas on federal lands.  30 U.S.C. § 1702(25).

Both parties agree that a "demand" as contemplated by the statute has not been made in this case.  (Doc. 26 at 20; Doc. 29 at 31.)  There has also been no claim by the DOI for underpayment of royalties against Fidelity.  Rather, BLM is acting under the authority of its investigatory power by requesting Fidelity's

records.  43 C.F.R. § 3162.4-1.  As Defendants point out, as the agency responsible for managing publicly owned lands and mineral resources, the BLM has the right and responsibility to know what gas production is occurring on public lands.

The Secretary of the Interior delegated enforcement of "regulations regarding production volume measurements [to BLM] as part of its broad range of duties concerning onshore oil and gas operations" under 43 C.F.R. § 3160.  *Devon Energy Production Co., L.P.,* 176 IBLA at 406.  BLM is authorized by regulation to request data from lessees.  43 C.F.R. § 3162.4-1.  "Implicit in this authority is the right to take action to ensure that accurate reports have been filed and to require corrective action when errors are found."  *Devon Energy Production Co., L.P.,* 176 IBLA at 409 (citing *Crawley Petroleum Corp.*, 140 IBLA 216, 219 (1997)).; *See also Harvey E. Yates, Co.*, 135 IBLA 373, 377 (1996) (explaining BLM is responsible for ensuring lessee reports accurately reflect gas production from Federal wells.)   The State Director's modified order requiring Fidelity to submit corrected volumes to Field Office for verification is within BLM's authority.

Therefore, based on the record before it, the Court cannot find the IBLA acted contrary to law by finding the statute of limitations in § 1724(b) was not triggered.  Defendants have not made a demand for payment of royalties, or are asserting underpayment of royalties.  The possibility that a future demand for

payment of royalties by ONRR may be time-barred does not foreclose Fidelity's

requirement to disclose reports to the BLM.

Additionally, BLM's regulations include independent limitation periods for

which records must be maintained under 43 C.F.R. § 3162.4-1(d).  Prior to 2017,

that regulation required that records be maintained for six years.  But "if the

secretary or his/her designee notifies the recordholder that the Department of the

Interior has initiated or is participating in an audit or investigation involving such

records, the records shall be maintained until the Secretary, or his/her designee,

releases the recordholder from the obligation to maintain such records."  Here, the

Field Office properly notified Fidelity of the results of its inspections and the

alleged reporting violations on October 25, 2012, and properly ordered Fidelity to

produce records for the previous six years.  Therefore, BLM's demand for records

was within the applicable time limitations imposed by regulation.  There is also no

indication that Fidelity has been released of its obligation to maintain the requested

records.

### C.  Did the IBLA err by failing to vacate the State Director's modified order?

Finally, Fidelity argues the IBLA erred by not vacating the Field Office's

October 25, 2012 order when the matter was remanded to the BLM's State

Director.  (Doc. 26 at 18.)  As discussed above, the IBLA set aside and remanded

the State Director's initial order based on the BLM's perceived lack of authority to

order Fidelity to submit amended reports to the ONRR.  *Id.*; AR 705-08.  Fidelity

argues the initial order should have been deemed null and void when the IBLA

granted BLM's request for remand, leaving the State Director without legal

authority to modify the order.  (Doc. 26 at 18.)

In its decision, the IBLA found the State Director's modification was not

precluded under the regulations governing the state director review process.  *Id*.  It

determined that "the State Director is free to affirm, modify, or reverse the

underlying BLM field office decision, and there is no need for a new field office

decision."  *Id.*  The IBLA explained "where BLM issues a decision that it believes

is partly beyond its authority, only the unauthorized part need be set aside, vacated,

or reversed; the authorized parts of the decision may stand and be affirmed."

*Fidelity Exploration & Production Co*., 188 IBLA at 307.  Additionally, the IBLA

noted the BLM never requested the IBLA to vacate its decision, "only that [the

IBLA] set it aside and remand to the State Director so he could regain jurisdiction

and correct a perceived error in the Written Order's corrective action provisions."

*Id.*

The Court agrees with the IBLA's conclusion.  BLM requested remand of

the State Director's initial order because it was determined that while "the BLM

has the authority to require Fidelity to submit the proposed corrected volumes to

the Miles City Field Office for verification . . . only ONRR has the authority to

order Fidelity to amend its [production reports] or make corrections on future [reports]."  AR 669.

On remand, the modified order was substantively identical to the original order, except for the amendment directing Fidelity to submit amended reports to Field Office instead of ONRR.  *See* AR 684.  This sole modification was made in response to a change in the BLM's internal procedures, illustrated in Internal Memorandum 2013-041.  (Doc. 29 at 24-25; AR 681.)  When the Field Office initially issued the order in 2012, BLM was authorized to "request a modified [production report] be sent to the MMS (ONRR's predecessor)."  *Id.*  That authority was removed in 2013, prompting BLM to seek remand of the Field Office order "so that it and ONRR [could] take further and appropriate actions under their respective scopes of authority."  (Doc. 32 at 5.)  On remand, the State Director's modification simply brought the Field Office order into compliance with BLM's new internal procedures.

State Director review of a BLM order is governed by 43 C.F.R. § 3165.3. Fidelity has not shown where the regulations prohibit a State Director from modifying a BLM field office order.  *See e.g., Southern Utah Wilderness Alliance*, 172 IBLA 183, 185 (2007) (the IBLA "may remand a case to BLM to allow the agency to alter and reissue its decision"); *Coronado Oil Company,* 164 IBLA 309,

314 (2005) (affirming the State Director's modifications to a BLM field office order.)

Fidelity also appears to suggest that the APA required that the Field Office order be vacated. (Doc. 26 at 21.) Fidelity is correct that vacatur is generally the normal remedy when a court finds an agency action is unlawful under the APA. *See e.g., Alaska Conserv. Council v. U.S. Army Corps of Eng'rs,* 486 F.3d 638, 654 (9th Cir. 2007). But IBLA's administrative review of a state director's decision, or a state director's review of a field office decision, is not conducted under the APA. The APA provides for judicial review of a final agency action for which there is no other adequate remedy. 5 U.S.C. § 704. The DOI administrative review process is not a judicial review of agency action under the APA. [2]

Here, the IBLA reviewed the relevant regulations and reasonably concluded there was no "basis in law or logic" for requiring the State Director to vacate the Field Office order on remand, rather than affirm the order as modified. *Fidelity Exploration & Production Co*., 188 IBLA at 307. This Court cannot find the

---

[2] It should also be noted that even under the APA "[a] federal agency may request remand in order to reconsider its initial action." *California Communities Against Toxics v. U.S. E.P.A.*, 688 F.3d 989, 992 (9th Cir. 2012). "A flawed rule need not be vacated." *Id.* The determination depends on how serious the agency's errors are and the disruptive consequences of vacatur. *Id.*

IBLA's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

## V.      Conclusion

Based on the foregoing, **IT IS RECOMMENDED** that:

(1)      Fidelity's Motion for Partial Summary Judgment (Doc. 25) be **DENIED** and Defendants' Motion for Summary Judgement (Doc. 28) be **GRANTED**;

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties.  The parties are advised that, pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court, and copies served on opposing counsel, within fourteen (14) days after entry hereof, or objection is waived.

DATED this 24th day of January, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge